# ORIGINAL

1  LAW OFFICES OF THOMAS D. MAURIELLO
   THOMAS D. MAURIELLO  (SBN 144811)
2  209 Avenida Fabricante, Suite 125
   San Clemente, CA 92672
3  Telephone: (949) 542-3555
   Facsimile: (949) 606-9690
4  tomm@maurlaw.com

5  (Additional counsel appear on signature page)

6  Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KENNETH GABLE, On Behalf of Himself and All Others Similarly Situated, | CASE NO. 8:07-cv-00376-AG-RNB |
| Plaintiff, | PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| vs. | |
| LAND ROVER NORTH AMERICA, INC., | |
| Defendant. | Date:    June 9, 2008<br>Time:   10:00 a.m.<br>Judge: Hon. Andrew J. Guilford<br>Courtroom: 10D |
| | [Declaration of Karen M. Leser-Grenon in Support of Motion filed concurrently] |
| | **REDACTED PURSUANT TO STIPULATION AND PROTECTIVE ORDER** |

# **TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   A. Land Rover's Sale And Distribution Of The Vehicles . . . . . . . . . . 3

   B. The Vehicle Defect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   C. Land Rover's Knowledge And Conduct Regarding The Defect . . . . 5

   D. Gable's Experience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   A. Standard For Class Certification . . . . . . . . . . . . . . . . . . . . . . . 12

   B. This Action Meets The Requirements For Class Certification . . . . 13

      1. Joinder of All Class Members is Impracticable . . . . . . . . . . 13

      2. Common Issues Exist And Predominate . . . . . . . . . . . . . . . 14

         (a) The Elements Of Plaintiff's Claims . . . . . . . . . . . . . . 15

         (b) Common Questions Of Law And Fact Predominate Over Any Questions Affecting Only Individual Members . . 16

      3. Plaintiff's Claims Are Typical Of Those Of The Members Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . 18

      4. Plaintiff And His Counsel Will Adequately Represent The Class . . . . . . . . . . . . . . . . . . . . . . . . . . 19

   C. A Class Action Is Superior To All Other Methods For The Fair And Efficient Adjudication Of The Controversy And The Action Is Manageable . . . . . . . . . . . . . . . . . . . . . . . . . 20

   D. Treatment Of This Case As A Class Action Is Managcable . . . . . . 22

      1. Liability Phase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      2. Damages Phase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem Products v. Windsor,*
521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bates v. United Parcel Service,*
204 F.R.D. 440 (N.D.Ca. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Burkhalter Travel Agency v. MacFarms Intern., Inc.,*
141 F.R.D. 144 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*California Rural Legal Assistance. Inc. v. Legal Servs. Corp.,*
917 F.2d 1171 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Chamberlan v. Ford Motor Company,*
402 F.3d 952 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dellums v. Powell,*
556 F.2d 167 (D.C.Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Doe v. Los Angeles Unified Sch. Dist.,*
48 F.Supp.2d 1233 (C.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Eigen & Carlisle v. Jacqueline,*
417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gasperoni v. Metabolife, Intern. Inc.,*
2000 WL 33365948 (E.D.Mich. Sept. 27, 2000)) . . . . . . . . . . . . . . . . . . . . 16

*General Tel. Co. of Southwest v. Falcon,*
457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gulf Oil Co. v. Bernard,*
452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Hilao v. Estate of Marcos,*
103 F.3d 767 (9th Cir. 1996)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ikonen v. Hartz Mountain Corp.,*
122 F.R.D. 258 (S.D.Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Cardizem CD Antitrust Litigation,*
145 F.Supp.2d 618 (E.D.Mich. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Chevron U.S.A., Inc.,*
109 F.3d. 1016 (5thCir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Prudential Ins. Co. Am. Sales Practices Litig.*
148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Segar v. Smith,*
738 F.2d 1249 (D.C.Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Simon II Litigation,*
211 F.R.D. 86 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Sugar Industry Antitrust Litigation,*
1976 WL 1374 (N.D.Ca. May 21, 1976) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Joseph v. General Motors Corp.,*
109 F.R.D. 635 (D. Colo. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lerwill v. Inflight Motion Pictures. Inc.,*
582 F.2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lozada v. Dale Baker Oldsmobile, Inc,*
145 F.Supp.2d 878 (W.D.Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Samuel-Bassett v. Kia Motors America, Inc.,*
212 F.R.D. 271 (E.D.Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Segar v. Smith,*
738 F.2d 1249 (D.C.Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Senter v. General Motors Corp.,*
532 F.2d 511 (6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Walters v. Reno,*
145 F.3d 1032 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATE CASES**

*Bell v. Farmer's Insurance Exchange,*
9 Cal.Rptr.3d 544 (1st Dist. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Earley v. Superior Court,*
79 Cal. App. 4th 1420 (2nd Dist. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Monte v. Toyota Motor Corp.,*
2001 WL 1152901 (Mich.App. Sept. 28, 2001) . . . . . . . . . . . . . . . . . . . 15

*Trotter v. Hamill Mfg. Co. a Div. of Firestone Tire & Rubber Co.,*
143 Mich.App. 593, 372 N.W.2d 622 (1985) . . . . . . . . . . . . . . . . . . . 15, 16

1

**STATUTES**

2    Federal Rules of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

3    Michigan Consumer Protection Act,
     M.C.L.A. § 445.901 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

4

5    **OTHER AUTHORITY**

6    Herbert B. Newberg & Alba Conte,
     Newberg on Class Actions (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Plaintiff, Kenneth Gable ("Plaintiff" or "Gable"), respectfully submits this Memorandum of Points and Authorities in support of his Motion for Class Certification ("Motion") pursuant to Fed.R.Civ.P. 23.

## II.   SUMMARY OF ARGUMENT

This is a class action arising as a result of an acknowledged defect in the alignment geometry in model year 2005 and 2006 Land Rover LR3 vehicles ("Vehicles" or "LR3s"). As a result of the defect, the Vehicles are, or become, misaligned, thereby resulting in the premature and uneven wear of the Vehicles' tires (often requiring tire replacement at less than 15,000 miles of use). Defendant, Land Rover North America, Inc. ("Land Rover" or "Defendant"), became aware of the defect shortly after the model year 2005 LR3s were brought to market and it received, and continues to receive, voluminous complaints from Vehicle owners and lessees. Despite its knowledge of the defect, Land Rover has continued to sell and lease the Vehicles without disclosing the existence of the defect to owners, lessees, or the consuming public. Although the tire wear, which is attributable to the Vehicle defect, was clearly covered by Land Rover's uniform warranty (and Defendant's senior management acknowledged this fact internally), Land Rover has refused to provide complete warranty coverage because it is more concerned with controlling costs than with honoring its obligations.

Land Rover has issued service bulletins and technical service bulletins to its authorized dealerships that state, in a uniform manner: (1) the corrective actions which Land Rover determined should be taken in an attempt to ameliorate the effects of the defect; and (2) the level (albeit insufficient) at which owners and lessees would be reimbursed for replacement tires under a program Land Rover created to honor part (but not all) of its warranty obligations. Land Rover consistently has attempted to minimize the expenses associated with this program by failing and refusing to notify consumers of the existence of this program and,

1   instead, has operated the program in a manner akin to a secret warranty program
2   where consumers are only offered the limited relief available if they happen to
3   visit a dealer when they are eligible for the inadequate relief offered by the
4   program and the dealer chooses to offer them that relief.[1]  As a result of Land
5   Rover's conduct, at least hundreds, if not thousands, of class members have
6   incurred excessive costs for tire replacements, alignments and related services as a
7   result of the common defect.

8          The proposed class of Michigan owners and lessees ("Class") in this case is
9   ascertainable, the claims presented are subject to common proof and the Class is
10  represented by an excellent class representative.  For these reasons, and all of the
11  reasons explained fully below, the Court should grant Plaintiff's Motion.

12  **III.   STATEMENT OF FACTS**
13         Gable initiated this class action against Land Rover for the benefit and
14  protection of all current and former owners and lessees of Vehicles purchased or
15  leased in the State of Michigan. (Complaint ("Compl." at ¶ 1)).  The defect that
16  plagues the Vehicles is common and uniform and has had a negative and profound
17  impact on the wear of the tires on Plaintiff's Vehicle, thereby necessitating their
18  premature replacement.  As explained below, the testimony and business records
19  of Land Rover, as well as third parties, confirm the widespread existence of this
20  common defect in the Vehicles, the egregious nature of Land Rover's conduct
21  (including the fact that Land Rover has attempted to cover up its misconduct in
22  discovery), and the suitability of this case for class action treatment.

23
24
25

---

26         [1]Ironically, under Land Rover's program (which is described more fully
27  below), it may be in a dealer's economic best interest to dissuade a consumer from
    replacing tires at a time when he or she would be eligible for relief under the
28  program.

A.   **Land Rover's Sale And Distribution Of The Vehicles**[2]

Land Rover, through its authorized dealers, marketed and sold the Vehicles throughout the United States, including Michigan. (Compl. at ¶¶ 1, 5).   Redacted

Redacted                                          (K. McGurl Dep. at 77:24-25; 78:1-4).[3]  Land Rover provided Plaintiff and all Class members with a 4 year, 50,000 mile bumper-to-bumper factory warranty. (Compl. at ¶ 17).

Redacted                               (D. Krumholz Dep. at 113:20-24; A. Clarke Dep. at 149:6-12).  Under the terms of Land Rover's express warranty, where, as here, tire wear is caused by a defect in the Vehicles, Land Rover is obligated to replace all of the tires and pay for any required alignment. (Compl. at ¶ 17).  Land Rover also is obligated to repair the defect that causes the premature and uneven wear. (Id.)  Nevertheless, as explained below, Land Rover knowingly violated its own warranty policy in an effort to contain costs by shifting expenses associated with its warranty obligation to its customers -- that is, the Class.

B.   **The Vehicle Defect**

The particular defect at issue, as Land Rover acknowledges, pertains to the alignment geometry of the Vehicles. (Compl. at ¶ 10; Wozniak Decl. at ¶¶ 3, 14). As a result of the defect, the rear tires are, or become, misaligned and wear

---

[2]Plaintiff relies on the Declaration of Karen M. Leser Grenon ("Grenon Decl."), to which certain documentary evidence, other discovery materials and pleadings [all of which are attached as Exhibits 1-24 and which are cited as "Grenon Decl. at Ex. __"], as well as certain cited portions of deposition transcripts [all of which are cited as the initial of the deponent's first name, the deponent's last name and "Dep. at __." (e.g., D. Krumholz Dep. at __) and appear alphabetically as Exhibits 25-29 to the Grenon Decl.], and the accompanying Declaration of Thomas Kennedy ("Mr. Kennedy")("Kennedy Decl."), which is attached as Exhibit 30 to the Grenon Declaration, and Plaintiff's expert, Robert J. Wozniak ("Mr. Wozniak")("Wozniak Decl.").

[3]*See also*, Comp. at ¶ 5.

1  unevenly and prematurely, causing the occupants to experience an extremely
2  rough ride, as well as exceptionally loud and disruptive noise, while driving the
3  Vehicles. (Id. at ¶¶ 11-12). As a result of the wear, the tires must frequently be
4  replaced prematurely -- in many cases after less than 15,000 miles. (Id. at ¶ 11).[4]
5       In recognition of the defect, and the resulting premature and uneven tire
6  wear, in the Fall of 2006, Land Rover issued Technical Service Bulletin
7  LA204-005 ("TSB"), which stated as follows:
8
9                        REDACTED
10
11 (Grenon Decl. at Ex. 2). In addition to acknowledging that the Vehicle defect
12 caused the uneven and premature tire wear, the TSB provided dealers with
13 guidelines for readjusting the geometry settings to purportedly address the effects
14 of the defect. (Id.; Wozniak Decl. at ¶ 3). The TSB was applicable to all of the
15 Vehicles. (Id.) The fact that the Vehicle defect (as opposed to individual driving
16 habits) was causing the uneven and premature tire wear was accepted throughout
17 Land Rover. As Alan Clarke ("Mr. Clarke"),              Redacted
18                    Redacted
19                                        (Grenon Decl. at Ex. 3; A.
20 Clarke Dep. at 140:16-23; 141:1-10; D. Krumholz Dep. at 31:1-15; 32:1-6.)[5]
21 _____
22     [4]Land Rover's internal documents reflect that owners and lessees were
23 reporting uneven and premature tire wear after as little as approximately Redacted
        (Grenon Decl. at Ex. 1).
24
25     [5]The multiple Vehicle and tire inspections conducted by Mr. Wozniak
   confirm that the premature and uneven tire wear observed was essentially identical
26 on all of the Vehicles and entirely consistent with alignment geometry being in a
27 toe out condition (in other words, being misaligned). (Wozniak Decl. at ¶ 14).
   The type of tire wear caused by the defect is not attributable to under-inflation or
28 over-inflation of tires, road conditions or individual driving habits. (Id. at ¶ 13).

**C.**   **Land Rover's Knowledge And Conduct Regarding The Defect**

Both the existence of the defect and Land Rover's attendant obligation under its warranty were known to Land Rover very early during the selling cycle of the Vehicles, and well before a majority of the Vehicles were marketed and sold.  With respect to the Vehicles, Mr. Clarke acknowledged that he

Redacted

of 2005." (A. Clarke Dep. at 19:19-21).  Indeed, as Kevin McGurl ("Mr. McGurl"),

Redacted

(Grenon Decl. at Ex. 4).  Mr. McGurl further acknowledged that

Redacted

Redacted

(Grenon Decl. at Ex. 6).[6]

Although Land Rover was aware of the widespread nature of the defect in

---

[6]In April 2006, Stephanie Lutz ("Ms. Lutz"),                Redacted

Redacted

(Grenon Decl. at Ex. 5; S. Lutz Dep. at 63:4-16).  At deposition, consistent with a disturbing trend of Land Rover deponents testifying that documents did not really mean what they clearly stated, Ms. Lutz          Redacted                              Redacted

(S. Lutz Dep. at 64:15-25; 65:1-20).  The fact that Ms. Lutz and other Land Rover witnesses unfortunately and consistently chose to be less than forthright (to be kind) under oath in an effort to protect their employer, although extremely disappointing and disturbing, does not change the clear meaning of Land Rover's documents and the damning admissions contained in those documents.

1   the alignment geometry, and the fact that it was the cause of premature and uneven
2   tire wear in the Vehicles, Land Rover took no steps to notify its customers of the
3   defect or to provide relief of any kind until October 2006.

4
5                                                          REDACTED
          REDACTED
6
7
8                              REDACTED
9
10
11
12   (Grenon Decl. at Ex. 11; D. Krumholz Dep. at 58:5-16).[7]
                                                          Redacted
13            Redacted
14                          (D. Krumholz Dep. at 60:5-7).[8]
15

---

16      [7]The breadth of the problem eventually resulted in at least a
17                    Redacted                    (Grenon Decl. at Ex. 7).
18   As Donald Krumholz ("Mr. Krumholz").          Redacted
19         Redacted          (Grenon Decl. at Ex. 8; *see also* Grenon Decl. at Ex. 9
20
21            REDACTED
22                                         REDACTED
23                              (D. Krumholz Dep. at 98:14-23; 109:3-
24   7,16-25; 110:1-5; 113:6-11; Grenon Decl. at Ex. 10; K. McGurl Dep. at 78: 5-13;
25   A. Clarke Dep. at 124:17-25; 125:1-8).
26      [8]The tire wear issue was so prevalent that Land Rover
27                          Redacted
28   (Grenon Decl. at Ex. 12).

1

2                                    REDACTED

3                                                                    (D.

4    Krumholz Dep. at 60:8-19; 62:2-9).

5

6                                    REDACTED                (D. Krumholz Dep. at

7    81:1-25).[9]

8        Not only did the contemplated relief fail to adequately compensate Vehicle

9    owners on its face, Land Rover was aware that it directly violated its own

10   warranty, which expressly required full reimbursement for the tire damage caused

11   by the Vehicle defect.                              REDACTED

12

13

14

15       REDACTED                                  REDACTED

16

17                                    REDACTED

18

19   (Grenon Decl. at Ex. 14).[10]                    REDACTED

20

21   _____

22       REDACTED                                    REDACTED

23

24                                    (*Id.*)

25   [9]

26                                    REDACTED

27   (Grenon Decl. at Ex. 13).

28   [10]This analysis was entirely consistent with that of others within Land
     Rover.                         REDACTED

1

2          Redacted                              Redacted

3                                                                    (*Id.*)

4

5                  Redacted                              Redacted

6

7                          (*Id.*)(Emphasis added).

8      In strikingly similar fashion,

9              Redacted                              Redacted

10

11      (Grenon Decl. at Ex. 15).

12                              Redacted

13

14

15          Redacted

16                              Redacted

17

18                              Redacted

19   (*Id.*).[11]

20   _____

21                              Redacted

22                                                          (Grenon

23   Decl. at Ex. 5)(Emphasis added).                              ail

24          Redacted                              Redacted

25

26              (Grenon Decl. at Ex. 3)(Emphasis added.)

27   [11]          Redacted                              Redacted

28

1    **Redacted**                                                        (D.

2    Krumholz Dep. at 34:16-18).

3         Land Rover's decision to choose cost considerations over its legal

4    obligations was echoed by other employees, including during a conversation

5    between Mr. Kennedy, an Iowa resident and then Vehicle owner, and Leo

6    McAdams ("Mr. McAdams"), a Land Rover Aftersales Market Manager

7    ("AMM").  Mr. Kennedy, having experienced premature and uneven wear on ten

8    (10) tires in a twenty-one (21) month period, made an appointment with his Land

9    Rover dealership in or about September 2007 because he was told that Mr.

10   McAdams would be present. (Kennedy Decl. at ¶¶ 4, 6).  While discussing the tire

11   wear issue, Mr. McAdams could not provide Mr. Kennedy with any assurance that

12   the defect causing the tire wear had been permanently fixed or addressed in the

13   LR3 Vehicles.  (Kennedy Decl. at ¶ 8).[12]  Mr. McAdams then told Mr. Kennedy

14   that Ford Motor Company ("Ford") was in the process of selling Land Rover[13] and

15   _____

16        **Redacted**                          (S. Lutz Dep. at 106-111; D.

17   Krumholz Dep. at 28-40)                    **Redacted**

18        **Redacted**

19        (D. Krumholz Dep. at 50:9-25).

20   [12]

21        **Redacted**                                   **Redacted**

22

23                             (L. McAdams Dep. at 40:1-3; 77:11-19).

24

25   [13]*See, e.g., Opel Platform a Boon for GM, Saturn Astra,* The Arizona
     Republic, December 27, 2007 (Cars), at 2, ("The sale of Jaguar and Land Rover by

26   Ford Motor Co. is expected to happen in the first quarter of 2008, said Mark

27   Fields, Ford's president of the Americas.  Tata Motors Ltd. and Mahindra &
     Mahindra Ltd., both Indian automakers, and One Equity Partners are reportedly

28   the front-running bidders, with offers of $1.8 billion to $2.2 billion for the

1   did not want to spend the money necessary to fix the tire wear problem because it

2   would involve replacing suspension parts that were much more costly to the

3   company than simply aligning the Vehicles in an effort to reduce tire wear.

4   (Kennedy Decl. at ¶ 7).  Ultimately, Mr. McAdams offered Mr. Kennedy a $3,000

5   discount off of an LR2, which Mr. McAdams specifically stated was not suffering

6   from the uneven tire wear problem.  (Kennedy Decl. at ¶ 9).[14]  Although Mr.

7   Kennedy knew that he could receive more for his Vehicle if he sold it on the

8   private market, he accepted Mr. McAdams' offer because he did not feel right

9   about selling the Vehicle with the unresolved tire wear issue to another consumer

10  (in other words, he did not want to do to someone else, that which had been done

11  to him by Land Rover).  (Kennedy Dec. at ¶ 11).

12

13        Redacted                    15                         Redacted

14                                              Redacted

15  _____

16  premium British companies") (a true and correct copy of which is attached as

17  Exhibit "16" to the Grenon Decl.); *see also* Jo Johnson, *India's empire builder*,
    The Financial Times Limited, December 29, 2007 (Comment & Analysis), at 7,

18  (same) (a true and correct copy of which is attached as Exhibit "17" to the Grenon

19  Decl.).

20        [14]                      Redacted

21                                              (L. McAdams Dep. at 86:18-22;
    87:1-3).

22

23        [15]Plaintiff's counsel filed an action on behalf of California Vehicle owners
    and lessees in November 2006.

24                                Redacted                          (Grenon

25  Decl. at Ex. 18).

26        Redacted                        (Grenon Decl. at Ex. 19).

27                                Redacted

28  (Grenon Decl. at Ex. 20)(Emphasis added).

(See Grenon Decl. at Ex. 11)                          Redacted

                    16

        Redacted

                                Redacted

                                                    (D. Krumholz

Dep. at 45:20-24; Grenon Decl. at Ex. 21).

            Redacted                          Redacted

                (D. Krumholz Dep. at 46:22-25; 47:1-19).

        Land Rover's conduct, both prior to and following the commencement of
this litigation, is particularly egregious in light of the significant costs it has
imposed on Class members, in violation of its warranty terms and applicable law,
by requiring Vehicle owners and lessees to pay the cost, in whole or in part, on an
ongoing basis, of the prematurely worn tires, all as a result of the Vehicles'
inherent defect.  In sum, Land Rover's own testimony and documents produce
clear and convincing proof, *inter alia*, that (1) the Vehicles suffer from a uniform
defect, (2) Land Rover had specific knowledge of that defect, (3) Land Rover
failed to disclose the defect; (4) Land Rover refused to provide full reimbursement
for the damages caused by the defect as required by its warranty and applicable
law; and (5) the claims are exceptionally well suited for class treatment.

**D.    Gable's Experience**

        Gable purchased a new 2005 LR3 from Land Rover of Farmington Hills,
Michigan in November 2004. (Compl. at ¶ 5). By the Fall of 2005, the stock

---

        16

                Redacted

                                        Redacted

1 | Goodyear Wrangler HP 225/60R18 tires placed on Gable's Vehicle had noticeably
2 | been wearing prematurely and unevenly. (*Id.* at ¶ 12). In or about January 2006,
3 | with only 16,213 miles on his odometer, Plaintiff complained to the Land Rover
4 | service department at his dealership about the premature and uneven tire wear.
5 | (*Id.* at ¶ 13). Although all four tires needed to be, and were, replaced at that time,
6 | Land Rover, after being contacted by the dealership, refused to pay for the cost of
7 | replacing these tires. (*Id.*) Ultimately, the dealership prorated Plaintiff's invoice
8 | for the tires, resulting in him still being required to pay $743.07 for four new tires
9 | for the Vehicle. (*Id.*) In or about May 2006, Plaintiff took his Vehicle to the Land
10 | Rover of Farmington Hills dealership for an oil change, at which time he noticed
11 | that other Vehicles present at the dealership were experiencing premature and
12 | uneven tire wear. (*Id.* at ¶ 14.)[17] Gable continues to experience premature and
13 | uneven tire wear as a result of the defect. (Wozniak Dec. at ¶ 11.)

## IV. ARGUMENT

### A. Standard For Class Certification

A plaintiff seeking to represent a class must first satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, by showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).In addition, the plaintiff must show that the case can proceed as a class action under subparts (1), (2), or (3) of Rule 23(b). Plaintiff's action satisfies these requirements.

In deciding a motion for class certification, the Court must avoid

---

[17]The tire wear experienced by Gable's Vehicle is precisely the type of uneven and premature wear experienced by the other Vehicle owners observed by Mr. Wozniak and is consistent with the alignment geometry defect identified by Land Rover. (Wozniak Decl. at ¶ 12).

1  pre-judging the merits, and must assume the truth of the substantive allegations of

2  Plaintiff's complaint. *Eigen & Carlisle v. Jacqueline*, 417 U.S. 156, 177-78

3  (1974); *Burkhalter Travel Agency v. MacFarms Intern., Inc.*, 141 F.R.D. 144, 152

4  (N.D. Cal. 1991). It also is well established that the Court's decision to grant

5  class certification lies within its sound discretion. *See Gulf Oil Co. v. Bernard*,

6  452 U.S. 89, 100 (1981). Moreover, any doubts about whether to certify a class

7  should be resolved in favor of certification. *Joseph v. General Motors Corp.*, 109

8  F.R.D. 635, 638 (D. Colo. 1981) ("Because the class certification is subject to later

9  modification, the court should err in favor of, and not against, the maintenance of

10  the class action."). Here, Plaintiff proposes the following Class:

11    **Class:**

12    All current and former owners and lessees of model year
      2005 and 2006 Land Rover LR3s purchased or leased in
13    the State of Michigan.

14  Excluded from the Class definition are the officers and employees of Land Rover

15  and its parent corporation, as well as any judge to whom this action is assigned.

16  The Class that Plaintiff proposes in this Motion clearly meets the objective criteria

17  and all of the requirements of Rule 23 of the Federal Rules of Civil Procedure.

18    **B.    This Action Meets The Requirements For Class Certification**

19       **1.    Joinder Of All Class Members Is Impracticable**

20         To satisfy the Rule 23(a)(1) requirement that joinder of all members of the

21  class is impracticable -- commonly referred to as "numerosity" -- "[t]he exact size

22  of the class need not be known so long as general knowledge and common sense

23  indicate that it is large." *Doe v. Los Angeles Unified Sch. Dist.*, 48 F.Supp.2d

24  1233, 1239 (C.D.Cal. 1999). Here, Land Rover cannot reasonably dispute that

25  joinder of all members of the Class is impracticable. The proposed Class is

26  composed of all current and former Michigan owners and lessees of the Vehicles.

27  Land Rover has sold or leased more than 35,000 Vehicles nationwide. (Grenon

28  Decl. at Ex. 22). Since approximately 3.38% of the United States population

1    resides in Michigan, it is reasonable to approximate that at least 1,183 Vehicles

2    were sold or leased in Michigan during that period. (Grenon Decl. at Ex. 23).

3    Hence, the numerosity requirement is clearly satisfied. *Ikonen v. Hartz Mountain*

4    *Corp.*, 122 F.R.D. 258, 262 (S.D.Cal. 1988) ("classes of 20 are too small, classes

5    of 20-40 may or may not be big enough depending on the circumstance of each

6    case, and classes of 40 or more are numerous enough"); 1 Herbert B. Newberg &

7    Alba Conte, Newberg on Class Actions § 3.05 at 247 (4th ed. 2002) ("[A]s few as

8    40 class members should raise a presumption that joinder is impracticable.").

9    Moreover, as discussed below, notwithstanding the large size of the Class, it

10   clearly is not too numerous to manage effectively.

11           **2.**    **Common Issues Exist And Predominate**

12       To fulfill the commonality prerequisite, a plaintiff must establish that there

13   are questions of law or fact common to the class as a whole. Rule 23(a)(2). The

14   commonality element, however, does not require that the claims of every class

15   member present identical questions. It is enough to satisfy commonality that

16   plaintiffs share one common issue of law or fact and their "'situations are

17   sufficiently parallel to insure a vigorous and full presentation of all claims for

18   relief.'" *California Rural Legal Assistance. Inc. v. Legal Servs. Corp.*, 917 F.2d

19   1171, 1175 (9th Cir. 1990)(internal quotations omitted); *see also* 1 Herbert B.

20   Newberg & Alba Conte, Newberg on Class Actions § 3.10 at 274-278 (4th ed.

21   2002) ("Rule 23(a)(2) is easily met in most cases [and] [w]hen the party opposing

22   the class has engaged in some conduct that affects a group of persons and gives

23   rise to a cause of action, one or more elements of that cause of action will be

24   common to all of the persons affected."). Thus, variations among Class members'

25   circumstances do not defeat class certification. Instead, the commonality inquiry

26   "focuses on the relationship between the common and individual issues [and]

27   [w]hen common questions present a significant aspect of the case and they can be

28   resolved for all members of the class in a single adjudication, there is clear

1   justification for handling the dispute on a representative rather than on an
2   individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)
3   (citations and quotations omitted). Since there is a substantial overlap in the
4   elements of Plaintiff's claims, they all generally share the same common questions
5   and will be established by the same common proof.

6                       *(a)    The Elements Of Plaintiff's Claims*

7          It is evident that once Land Rover became aware that it had marketed and
8   sold defective Vehicles that were causing damage covered by Defendant's express
9   warranty, it failed and effectively refused to take any action to notify consumers of
10  the defect or to provide them adequate reimbursement. Plaintiff seeks relief for
11  breach of express and implied warranty, violations of the Michigan Consumer
12  Protection Act ("MCPA"), M.C.L.A. 445.901 *et seq.*, and, in the alternative, for
13  unjust enrichment.

14         With respect to Plaintiff's breach of express warranty claim, Plaintiff
15  asserts, quite simply, that Land Rover's express warranty (which was uniform and
16  covered all Vehicles) was breached by Land Rover's refusal to (1) reimburse Class
17  members in full for the replacement of prematurely and unevenly worn tires; and
18  (2) for failing to correct the defect. *See, e.g., Monte v. Toyota Motor Corp.*, 2001
19  WL 1152901 * 3 (Mich.App. Sept. 28, 2001), *appeal denied*, 467 Mich. 860, 651
20  N.W.2d 912 (2002)(holding that MCL 440.2313 provides that a claim for breach
21  of express warranty requires that the plaintiff establish "express warranties by the
22  seller" that are created by "(a) an affirmation of fact or promise made by the seller
23  to the buyer which relates to the goods and becomes part of the basis of the
24  bargain"; or (b) "[a] description of the goods which is made part of the basis of the
25  bargain creates an express warranty that the goods shall conform to the
26  description"). Similarly, under the implied warranty claim, Plaintiff asserts that by
27  its conduct, Land Rover provided Class members with Vehicles that were not of
28  merchantable quality. *Trotter v. Hamill Mfg. Co. a Div. of Firestone Tire &*

*Rubber Co.*, 143 Mich.App. 593, 598-99, 372 N.W.2d 622, 624 (1985)(internal citations omitted)("'The distinction between the elements of negligence and breach of implied warranty is that in the former plaintiff must prove that the defect was caused by the manufacturer's negligence, whereas under the warranty theory, plaintiff need only establish that the defect was attributable to the manufacturer, regardless of the amount of care utilized by the manufacturer.'")

With respect to Plaintiff's claims asserted under the MCPA, there similarly are common and predominate issues concerning whether Plaintiff will be able to establish violations of that statute based upon Defendant engaging in unfair, deceptive and misleading business practices when it marketed and sold hundreds, if not thousands, of the LR3s in the State of Michigan that were defective. *See, e.g., Gasperoni v. Metabolife, Intern. Inc.*, 2000 WL 33365948 (E.D.Mich. Sept. 27, 2000(certifying class under MCPA and noting that reliance and causation are satisfied under the statute by proof that consumer plaintiff purchased and used the product at issue and was damaged by defendant's alleged misrepresentations or other deceptive and unfair business conduct).

Finally, with respect to Plaintiff's unjust enrichment claim, "the elements of a claim of unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain." *Lozada v. Dale Baker Oldsmobile, Inc.*, 145 F.Supp.2d 878, 892 (W.D.Mich. 2001). From the required elements of this claim, it is self-evident that the focus of such a claim is on the conduct of the defendant. *In re Cardizem CD Antitrust Litigation*, 105 F.Supp.2d 618, 670 (E.D.Mich. 2000)(denying motion to dismiss unjust enrichment claims in class action).

        *(b)*    *Common Questions Of Law And Fact Predominate Over Any Questions Affecting Only Individual Members*

All of Plaintiff's claims focus upon the uniform manner in which Land Rover marketed and sold the Vehicles (containing a design defect) to Class

1    members, including Land Rover's affirmative misrepresentations and omissions

2    regarding the defective Vehicles and, as a result of this conduct, whether

3    Defendant violated the MCPA, breached its express warranty, breached the

4    implied warranty of merchantability and/or was unjustly enriched.  As the Court in

5    *Chamberlan v. Ford Motor Company*, 402 F.3d 952, 962 (9th Cir. 2005) (where

6    the court denied a petition for interlocutory review of a class action under a

7    California consumer protection statute alleging that the defendant knowingly

8    manufactured, sold and distributed automobiles containing an engine part with a

9    uniform design defect), recently and cogently explained:

> The district court's decision in this case is typical in that it presents no error of law and is not manifestly erroneous.  Although the district court was succinct, it provided detailed, substantive examples of the common issues: (1) whether the design of the plastic intake manifold was defective; (2) whether Ford was aware of alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated the CLRA.  The common issues here are plain enough that no further explanation is required to justify the district court's decision....  Requiring the district court to expand its analysis would produce nothing more than a lengthy explanation of the obvious.

Similarly, here, the common issues of law and fact that predominate in this action

are as follows: (a) whether the Vehicle had an alignment geometry defect; (b)

whether Land Rover was aware of the defect; (c) whether Land Rover had a duty

to disclose its knowledge of the defect; (d) whether Land Rover failed to do so; (e)

whether Land Rover violated the MCPA; (f) whether Land Rover violated its

warranty, the implied warranty of merchantability, or was unjustly enriched; and

(g) whether Plaintiff and Class members have been damaged.

The documents produced by Land Rover in discovery demonstrate that the

defect is uniform and common to all Class members.  Any finding by a trier of fact

that the Vehicles contain a defect will be applicable to all Class members.  Thus,

Plaintiff's theory of liability is clearly susceptible to proof on a Class-wide basis.

Moreover, any argument that Land Rover may make regarding the purported need

1  to examine individual driving habits of Vehicle owners and lessees was flatly, and

2  properly, rejected in *Samuel-Bassett v. Kia Motors America, Inc.*, 212 F.R.D. 271,

3  282 (E.D.PA. 2002), *vacated on other grounds*, 357 F.3d 392 (3rd Cir. 2004).

4  There, owners and lessees asserted claims, including for breach of express

5  warranty, in connection with a defective brake system on Kia's Sephia vehicles

6  (sold between 1995 and 2001). In certifying the class, the Court rejected Kia's

7  argument that individual driving habits precluded a finding that common issues

8  predominated:

> In this case, while the defendant has strenuously argued that this case
> does not satisfy Rule 23(b)(3) because the merits of each individual
> car owner's complaints must be evaluated along with their individual
> driving habits and conditions, we nevertheless find from the evidence
> amassed thus far that the questions common to the class clearly
> predominate over those which only affect certain individual owners.
> To be sure, there is but one model at issue in this case, manufactured
> at Kia's Korea plant..... ***While Defendant is no doubt correct that
> each vehicle was driven differently by different drivers in different
> locations and that the vehicles manifested varying symptoms such
> as pulsating, grinding, vibration, and failure to stop, there is
> nonetheless more than sufficient indicia that a vast number of those
> Sephias manufactured and sold between 1995 and 2001
> experienced some or all of the above symptoms and were subject to
> the wear-out of their brake pads and rotors before reaching the
> 5,000 mile mark regardless of who was driving them or where or
> how they were being driven.***

> \*      \*      \*

> We thus conclude that the questions of whether the Sephia possesses
> the brake system defect alleged and whether Defendant lacks the
> means to repair the defect or replace the defective brake system such
> as to render it liable for beach of express and implied warranties ... do
> predominate over those issues unique to individual claims.

(*Id.* at 282)(Emphasis added and footnote omitted). In sum, common issues of law

and fact clearly predominate because Plaintiff will prove his claims through proof

regarding Land Rover's uniform conduct. All of the questions identified above

compose the core issues in this litigation and are susceptible to common proof.

### 3.    Plaintiff's Claims Are Typical Of Those Of The Members Of The Class

Rule 23(a)(3) requires that the claims of the representative plaintiffs be

1   typical of those of the class.  Commonality and typicality "tend to merge," such

2   that factors that support a finding of commonality also support a finding of

3   typicality.  *See General Tel. Co. of Southwest v. Falcon*,  457 U.S. 147, 157

4   (1982).  Plaintiffs demonstrate typicality by showing that the "unnamed class

5   members have injuries similar to those of the named plaintiffs and that the injuries

6   result from the same, injurious course of conduct."  *Armstrong v. Davis*, 275 F.3d

7   849, 869 (9th Cir. 2001), *cert. denied* 537 U.S. 812 (2002).  "Generally, the

8   typicality requirement is met if the representative shares a common element of fact

9   or law with the class."  *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th

10  Cir. 1976).  Here, Plaintiff purchased a Vehicle with the same alignment geometry

11  defect as all other Vehicles and suffered the same harm as that suffered by other

12  members of the Class.  Accordingly, Plaintiff's claims are typical of those of the

13  Class he seeks to represent.

> **4.    Plaintiff And His Counsel Will Adequately Represent The Class**

14

15          The adequacy requirement of Rule 23(a)(4) is met if a plaintiff fulfills two

16  conditions: (a) the plaintiff's attorneys must be qualified, experienced, and

17  generally able to conduct the proposed litigation; and (b) the plaintiff must not

18  have interests antagonistic to those of the class.  *Lerwill v. Inflight Motion

19  Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  Here, Plaintiff is represented by

20  counsel who are qualified and possess substantial experience in the conduct of

21  litigation of the size, scope, and complexity of this case in general and consumer

22  class actions in particular.  (Grenon Decl. at Ex. 24).  As to the second prong of

23  the "adequacy" test, only a conflict that goes to the very subject matter of the

24  litigation will defeat a party's claim of representative status.  Factual differences in

25  the merits of the named plaintiff's underlying claims do not affect the plaintiff's

26  ability to vigorously represent the class.  *Walters v. Reno*, 145 F.3d 1032, 1046

27  (9th Cir. 1997).  Here, Plaintiff does not have any conflicts with the members of

28

1   the Class.  Plaintiff's injuries are essentially the same as those of the members of

2   the proposed Class.  Plaintiff has, and will continue to, vigorously pursue relief on

3   behalf of the proposed Class.  Moreover, Plaintiff is able and willing to prosecute

4   this case and to protect the interests of the Class.

5   **C.   A Class Action Is Superior To All Other Methods For The**
        **Fair And Efficient Adjudication Of This Controversy And**
6       **The Action Is Manageable**

7   Weighing heavily in favor of class certification is the fact that certification

8   of Plaintiff's claims is the only economically feasible method for the fair and

9   efficient adjudication of this controversy.  Any individual Class members'

10  damages remain modest relative to the time and expense required to properly

11  prosecute these claims, as well as Land Rover's financial resources and the

12  millions of dollars generated by its sale of these Vehicles.  Individual Class

13  members have no economic ability or incentive to wage costly and complex

14  litigation against a well-financed Defendant such as Land Rover.  Rule 23(b)(3)

15  requires the court to determine whether "a class action is superior to other

16  available methods for a fair and efficient adjudication of the controversy."  Fed.

17  R. Civ. P. 23(b)(3).

18  The four specific factors listed in the rule compel the conclusion that a class

19  action is superior to resolve the claims of Plaintiff and the proposed Class.  The

20  first factor is the interest of each member in "individually controlling the

21  prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A).  Here, the

22  interest of Class members in individually controlling separate actions is minimal:

23  while the aggregate damages of the Class are significant, the damages of each

24  individual Class member will be relatively small.  Given the expense of securing

25  counsel and pursuing claims separately, Class members have little interest in

26  maintaining individual, non-personal actions. *Hanlon,* 150 F.3d at 1023 ("even if

27  efficacious, these claims would not only unnecessarily burden the judiciary, but

28  would prove uneconomic for potential plaintiffs [since] [i]n most cases, litigation

1   cost would dwarf potential recovery [and] [i]n this sense, the proposed class action

2   is paradigmatic."). Indeed, the Supreme Court has recognized that, absent class

3   treatment, similarly situated consumers with relatively small but nevertheless

4   meritorious claims for damages would, as a practical matter, have no means of

5   redress because of the time, effort and expense required to prosecute individual

6   actions. As the Supreme Court noted in *Amchem Products v. Windsor*, 521 U.S.

7   591 (1997), Rule 23(b)(3) aims primarily at vindicating "the rights of groups of

8   people who individually would be without effective strength to bring their

9   opponent into court at all." The Supreme Court declared cases like this one to be

10  paradigms for class treatment:

11

12        The policy at the very core of the class action mechanism is to
          overcome the problem that small recoveries do not provide the
13        incentive for any individual to bring a solo action prosecuting his or
          her rights. The class action solves this problem by aggregating the
          relatively paltry potential recoveries into something worth someone's
14        (usually an attorney's) labor.

15  *Amchem*, 521, U.S. at 617 (internal quotations omitted). This action is just such a

16  "core" class action. Few of the present Class members could afford to undertake

17  individual litigation against Land Rover to recover the relatively small damages at

18  issue here, but the failure to recover such damages is a real hardship to many

19  people. If the class device were unavailable here, an economic injustice would

20  result: the Class members would, as a practical matter, have no meaningful redress

21  against Land Rover and Land Rover would be unjustly enriched by the profits

22  gained from its misconduct.

23        The second factor, "the extent and nature of any litigation concerning the

24  controversy already commenced" by members of the Class, also supports

25  proceeding with this action. To Plaintiff's knowledge, there are no other actions

26  currently pending involving Michigan owners and lessees.

27        The third factor is the desirability "of concentrating the litigation of the

28  claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This forum is

1   undoubtedly an appropriate forum for the resolution of Plaintiff's claims because

2   Land Rover is headquartered within this District.

3        The fourth and final factor is "the difficulties likely to be encountered in the

4   management of a class action." Fed. R. Civ. P. 23(b)(3)(D). As discussed below,

5   this action is exceedingly manageable and the claims for which Plaintiff seeks

6   class certification are all based on the same set of operative facts.

7   **D.     Treatment Of This Case As A Class Action Is Manageable**[18]

8        To date, the parties have encountered no difficulties in managing this case

9   as a class action and this case easily can be tried and adjudicated as a class action.

10  As the California Court of Appeals noted in *Earley v. Superior Court,* 79 Cal.

11  App. 4th 1420, 1434 (2nd Dist. 2000), a class action can be tried as to liability and

12  damages with Plaintiff acting as the fiduciary on behalf of the class:

> A class action is a representative action in which the class
> representatives assume a fiduciary responsibility to prosecute the
> action on behalf of the absent parties. The representative parties not
> only make the decision to bring the case in the first place, but even
> after class certification and notice, they are the ones responsible for
> trying the case, appearing in court and working with class counsel on
> behalf of absent members. The structure of the class action does not
> allow absent class members to become active parties, since 'to the
> extent the absent class members are compelled to participate in the
> trial of the lawsuit, the effectiveness of the class action device is
> destroyed.' The very purpose of the class action is to relieve the
> absent members of the burden of participating in the action.
> (Citations and parentheticals omitted.)

20  Plaintiff proposes that the trial of this action be bifurcated into (1) a liability phase

21  (including a determination of injunctive relief) and (2) a damages phase.

22  Bifurcation of class actions into a liability phase and a damages phase is widely

23  recognized and accepted. *See Bates v. United Parcel Service*, 204 F.R.D. 440, 448

24  (N.D.Ca. 2001).

25

26

27        [18]Upon certification, Plaintiff will meet and confer with Defendant to create
    an appropriate plan to provide notice of certification to the Class and will then
28  submit the same to the Court for its review and approval.

### 1.   Liability Phase

The liability phase will consist of a jury trial.  The central issues to be determined in the liability phase are: (a) whether the Vehicles are defective; (b) whether Land Rover was aware of the defect in the Vehicles; (c) whether Land Rover had a duty to disclose its knowledge regarding the defective nature of the Vehicles; and (d) whether Land Rover's conducted violated the statutes and common law upon which Plaintiff's claims are based.  Plaintiff will prove Land Rover's liability through a number of methods, including, *inter alia*, the presentation of Land Rover's own documents and records, deposition and witness testimony (including Land Rover's representatives and the Plaintiff) and expert testimony.  Accordingly, Plaintiff does not anticipate that the liability phase of the trial would be markedly more complex than any non-class consumer product case and reasonably believes that the liability phase can be tried in approximately eight (8) to ten (10) days.

### 2.   Damages Phase

The second phase of the trial will focus on Class damages.  The central issue to be determined in the damages phase is the amount of damages and relief which to which Class members are entitled.  Plaintiff will provide the jury with a basis to calculate Class-wide damages though the presentation of data and statistics (through experts), as well as, *inter alia*, evidence regarding the effect of the defect at issue, repair and replacement costs and product purchase price.  *See* 3 Newberg on Class Actions § 10.5 at 483-487 (4th ed. 2002)(there is a growing trend in favor of using aggregate damages trials).  It is well settled that the calculation of damages on a Class-wide basis is both proper and does not create manageability problems.  *See, e.g., In re Sugar Industry Antitrust Litigation*, 1976 WL 1374, *27 (N.D.Ca. May 21, 1976)(citations omitted); *Bell v. Farmers Insurance Exchange*, 9 Ca.Rptr.3d 544, (1st Dist. 2004)("We find little basis in the decisional law for skepticism regarding the appropriateness of the scientific

1 │ methodology of inferential statistics as a technique for determining damages in an

2 │ appropriate case"). This method has been approved by the leading treatise on

3 │ class actions:

4 │     Inherent in the basic theory of class actions is the fact that the court
and the parties recognize the defendant's full liability exposure from

5 │ the outset, because of common questions of the defendant's liability
to the class. If the liability to the class is proved, then class recovery

6 │ entitlement is measured by individual or aggregate proofs of loss or
of the defendant's unjust enrichment.

7 │ 3 Newberg on Class Actions, § 10.05; *see also, In re: Chevron U.S.A., Inc.*, 109

8 │ F.3d 1016, 1019-20 (5th Cir. 1997)("The essence of the science of inferential

9 │ statistics that one may confidently draw inferences about the whole from a

10 │ representative sample of the whole"); *In re Simon II Litigation*, 211 F.R.D. 86, 150

11 │ (E.D.N.Y. 2002), *vacated and remanded on other grounds*, 407 F.3d 125 (2d Cir.

12 │ 2005)("The use of statistical evidence and methods in the American judicial

13 │ system to establish liability and damages is appropriate" in mass injury cases);

14 │ *Segar v. Smith,* 738 F.2d 1249, 1264 (D.C.Cir. 1984)(court calculated back and

15 │ front pay in Title VII case on a class wide basis using statistical methods).

16 │     Plaintiff's anticipated presentation of damages (based on a statistical,

17 │ formulaic, analysis of the various factors set forth above), is particularly

18 │ manageable in the context of the common remedies being sought (*i.e*, refunds,

19 │ repairs, etc.). The straightforward damages, and evidence regarding the same,

20 │ which will be presented by Plaintiff during the damages phase of the trial, are

21 │ markedly less complicated than many other class actions which have been deemed

22 │ manageable. *See Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996)

23 │ (upholding aggregate damage award predicated on claims arising from the

24 │ detention and torture of thousands of citizens, including award of compensatory

25 │ and exemplary damages); *Dellums v. Powell*, 566 F.2d 167k 189 (D.C.Cir.

26 │ 1977)(upholding a jury's award of a lump sum of compensatory damages, and a

27 │ distribution matrix of damages for unlawful arrests and illegal detentions based on

28 │ the arrests). Thus, Plaintiff does not anticipate that the damages phase of the trial

1  would be particularly complex and reasonably believes that the damage phase can

2  be tried in approximately two (2) to three (3) days.[19]

3  **V.    CONCLUSION**

4          For the reasons stated above, the Court should grant Plaintiff's Motion for

5  Class Certification.

LAW OFFICES OF THOMAS D.
MAURIELLO

Dated:   January 15, 2008          By: _____
                                   Thomas D. Mauriello (SBN 144811)
                                   209 Avenida Fabricante, Suite 125
                                   San Clemente, CA 92672
                                   Telephone: (949) 542-3555
                                   Facsimile: (949) 606-9690
                                   tomm@maurlaw.com

                                   Mark F. Anderson (SBN 44787)
                                   Matthew Da Vega (SBN 195443)
                                   KEMNITZER, ANDERSON,
                                   BARRON, OGILVIE, & BREWER
                                   LLP
                                   445 Bush Street, 6th Floor
                                   San Francisco, CA 94108
                                   Telephone: (415) 861-2265
                                   Facsimile: (415) 861-3151

                                   James E. Miller
                                   Karen M. Leser (SBN 231189)
                                   SHEPHERD FINKELMAN MILLER
                                    & SHAH, LLC
                                   65 Main Street
                                   Chester, CT 06412
                                   Telephone: (860) 526-1100
                                   Facsimile: (860) 526-1120

---

[19]Once aggregate damages are established, it is well established that "the allocation of the aggregate sum [of the judgment] among class members is an internal class accounting question that does not directly concern the defendant...." *Bell*, 9 Cal.Rptr.3d at 581; 2 Conte & Newberg on Class Actions, § 4:26. Any damages award by the trier of fact would be claimed by Class members through a Court approved process overseen either by a third party claims administrator or a special master. *See Newberg on Class Actions* § 9.55.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Shah
Nathan C. Zipperian
SHEPHERD, FINKELMAN,
MILLER & SHAH, LLC
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883

**Attorneys for Plaintiff
and the Proposed Class**