1 | MAURIELLO LAW FIRM, APC
2 | THOMAS D. MAURIELLO  (SBN 144811)
3 | 1181 Puerta Del Sol, Suite 120
San Clemente, CA 92673
4 | Telephone: (949) 542-3555
5 | Facsimile:  (949) 606-9690
Email: tomm@maurlaw.com
6
7
8
9 | **IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11 | KENNETH GABLE, On Behalf          :        CASE NO. 8:07-cv-00376-AG-RNB
of Himself and All Others Similarly   :
12 | Situated,                                       :
13 |                                                    :        **PLAINTIFFS' CONSOLIDATED**
                          Plaintiff,      :        **SUPPLEMENTAL**
14 |                                                    :        **MEMORANDUM OF LAW IN**
                                                    :        **SUPPORT OF CLASS**
15 | vs.                                             :        **CERTIFICATION**
                                                    :
16 |                                                    :
JAGUAR LAND ROVER NORTH      :
17 | AMERICA, INC.,                            :
                                                    :
18 |                                                    :
                          Defendant.    :
19 | _____ :
                                                    :
20 | BRIAN J. WOLIN, on Behalf of          :
21 | Himself and All Others                   :        CASE NO. 8:07-cv-00627-AG-RNB
Similarly Situated,                         :
22 |                                                    :
23 |                          Plaintiff,      :
                          v.                  :
24 |                                                    :
                                                    :
25 | JAGUAR LAND ROVER NORTH      :
26 | AMERICA, INC.,                            :
                          Defendant.    :
27 | _____ :
28

1

_____

2  KIMBERLY S. GOMCSAK, On          :
   Behalf of Herself and All Others  :      CASE NO. 8:07-cv-1200-AG-RNB
3  Similarly Situated,               :

4                                    :
                          Plaintiff, :
5                                    :

6          vs.                       :      **Date:      January 31, 2011**
                                     :      **Time:      10:00 a.m.**
7  JAGUAR LAND ROVER NORTH           :      **Judge:     Hon. Andrew J.**
8  AMERICA, INC.,                    :      **            Guilford**
9                                    :      **Court:      10D**

10                                   :
                         Defendant.  :
11 _____      :

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   PROCEDURAL HISTORY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      A.    The Gable Action  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      B.    The Gomcsak Action  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      C.    The Wolin Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

      D.    The Class Certification Proceedings  . . . . . . . . . . . . . . . . . . . . . . .  5

      E.    The Ninth Circuit Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

      F.    Issues That Remain To Be Addressed  . . . . . . . . . . . . . . . . . . . . . .  9

III.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      A.    Plaintiffs' Trial Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      B.    Plaintiffs' Claims Under The "Tire" Warranty  . . . . . . . . . . . . . . .  15

      C.    Plaintiffs Have Established The Adequacy And
            Numerosity Elements As The Ninth Circuit Recognizes . . . . . . . . .  21

            1.    Plaintiffs Have Established Numerosity  . . . . . . . . . . . . . . .  22

            2.    Plaintiffs Have Established Adequacy . . . . . . . . . . . . . . . . .  23

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### <u>FEDERAL CASES</u>

4

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.,*

5

247 F.R.D. 156 (C.D.Cal. 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

6

*Amchem Products v. Windsor,*

7

521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

8

*Beattie v. CenturyTel, Inc.,*

9

511 F.3d 554 (6th Cir. 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

10

*Bertulli v. Indep. Ass'n of Cont'l Pilots,*

11

242 F.3d 290 (5th Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

12

*Blackie v. Barrack,*

13

524 F.2d 891 (9th Cir. 1975)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 19

14

*Dilts v. Penske Logistics, LLC,*

15

267 F.R.D. 625 (S.D.Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

16

*Doe v. Los Angeles Unified Sch. Dist.,*

17

48 F.Supp.2d 1233 (C.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

18

19

*Ikonen v. Hartz Mountain Corp.,*

122 F.R.D. 258 (S.D.Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

20

21

*In re Bridgestone/Firestone, Inc.,*

288 F.3d 1012 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

22

23

*In re Chevron U.S.A., Inc.,*

109 F.3d. 1016 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

24

25

*In re Potash,*

159 F.R.D. 682 (D.Minn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

26

27

28

-ii-

*In re Simon II Litigation*,
211 F.R.D. 86 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*In re Sugar Industry Antitrust Litigation*,
1976 WL 1374 (N.D.Ca. May 21, 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*In re Visa Check/MasterMoney Antitrust Litigation*,
280 F.3d 124 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19, 20

*Kincaid v. City of Fresno*,
244 F.R.D. 597, 606-607 (E.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Olden v. LaFarge Corp.*,
383 F.3d 495 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Segar v. Smith*,
738 F.2d 1249 (D.C.Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Simon v. Philip Morris Inc.*,
200 F.R.D. 21 (E.D.N.Y.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Tierno v. Rite Aid Corp.*,
2007 WL 4166028 (N.D.Cal. Nov.19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Wolin v. Jaguar Land Rover North America, LLC*,
617 F.3d 1168 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**STATE CASES**

*Bell v. Farmers Insurance Exchange*,
9 Cal.Rptr.3d 544 (1st Dist. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14

-iii-

*Colon v. Land Rover North America, Inc.*,
 No. 1:06-CV-075163 (Superior Court of California, County of Santa Clara) . . 22

**STATUTES**

Federal Rules of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**OTHER AUTHORITY**

Herbert B. Newberg & Alba Conte,
 Newberg on Class Actions (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# I.   __INTRODUCTION__

Plaintiffs, Kenneth Gable ("Gable"), Kimberly Gomcsak ("Gomcsak") and Brian Wolin ("Wolin") (collectively, "Plaintiffs"), respectfully submit this Consolidated Supplemental Memorandum of Law in Support of Class Certification. For the reasons explained below, Plaintiffs respectfully submit that the Court should certify the proposed Classes (defined below).[1]

Plaintiffs will not attempt to anticipate the new and, if past is a prologue to the future, outlandish arguments that Land Rover is expected to advance in an attempt to delay the inevitable.  Rather, Plaintiffs respectfully suggest that the Court should simply take notice of Land Rover's past admissions, while viewing the new desperate assertions of Land Rover with a jaundiced eye.  The Court need look no further than the transcript of the proceedings on December 6, 2010 to conclude that Land Rover's credibility with the Court should be deemed lacking. For example, notwithstanding Land Rover's feigned inability at the December 6 hearing to understand the clear meaning and import of the Ninth Circuit Court of Appeals' decision in *Wolin v. Jaguar Land Rover North America*, *LLC*, 617 F.3d 1168 (9th Cir. 2010) (the "Ninth Circuit Decision"), the fact of the matter is that, in

---

[1]Unless otherwise noted, Plaintiffs adopt the same definitions contained in their previous class certification submissions for purposes of convenience and consistency and hereby incorporate the same by reference.

seeking *en banc* review of the Ninth Circuit Decision (which request was unanimously rejected), Land Rover expressly admitted that the Ninth Circuit Decision rendered class certification a *"fait accompli*."  *See* Land Rover's Petition for Rehearing En Banc at p. 4, the cited excerpt of which is attached as Exhibit "A."  Similarly, at the December 6 hearing, Land Rover responded to the Court's direct question about whether Land Rover had argued before the Ninth Circuit that no automobile defect could be certified by disclaiming any such argument before the Ninth Circuit.  A review of the record before the Ninth Circuit, however, reveals that, in effect, this is exactly the argument that Land Rover attempted to advance before the Ninth Circuit.  Of course, the Ninth Circuit Decision itself confirms the true nature of the  arguments advanced by Land Rover in appeal: *"[W]e reject Land Rover's suggestion that automobile defect cases can categorically never be certified as a class*."  Ninth Circuit Decision, 617 F.3d 1173.  Similarly, in the hearing before the Ninth Circuit, Land Rover expressly misrepresented the record before this Court, claiming that Plaintiffs did not assert a claim for diminution in value with respect to the Vehicles -- even though the Complaints at issue expressly plead diminution in value, *see* Gable Complaint at ¶ 32; Wolin Complaint at ¶ 32; and Land Rover was well aware of this fact, having repeatedly argued in opposing remand of certain related cases that the consistently

-2-

asserted claim for diminution in value prevented such remand.  Of course, Land

Rover's "twisting" of facts is nothing new to this case -- Land Rover has

consistently asserted that the defect at issue was not a serious problem -- when the

facts of record establish the exact opposite (Land Rover's own documents establish

that the defect resulted in a five-fold increase in demand for tires and that, if Land

Rover had honored its own warranty to consumers, its estimate was that it would

cost tens of millions of dollars).[2]

Plaintiffs respectfully submit that the time for Land Rover's nonsense and

delay should be deemed over.  Land Rover marketed and sold the Vehicles at issue

with a known defect, the Vehicle defect at issue had a profound impact on the

consuming public (despite Land Rover's nonsensical and unsupportable claims to

the contrary), and Land Rover then purposefully (and admittedly) violated its own

legal obligations under its Limited Warranty in order to crassly save the enormous

---

[2]Plaintiffs respectfully submit that Land Rover's obfuscation regarding
these facts is responsible, in large part, for this Court's previous decisions in the
*Gable* and *Wolin* cases denying class certification.  In sum, although this Court
explicitly acknowledged that class certification was an extremely close call (both
before and after issuing its class certification decision), the Court appears to have
been influenced by Land Rover's repeated representations that the problem at
issue was *de miminis* in nature -- even though Plaintiffs respectfully submit that
the facts of record indicate otherwise and that Land Rover's supposed statistics are
self-serving and highly suspect.  By more explicitly challenging this pattern and
practice, Plaintiffs hope to blunt the effect of future acts of misdirection by Land
Rover.

expenses it would incur if it abided by those obligations.  Thus, this case is relatively simple and straightforward.  For this reason and all of the reasons explained below, the Court should certify the Classes, establish a schedule to complete remaining discovery and set these cases down for trial in 2011.  Plaintiffs and their counsel look forward to the opportunity to present the true facts of this case to a trier of fact and expose the full scope of Land Rover's corporate misconduct to a jury of Plaintiffs' peers.

## II.  PROCEDURAL HISTORY

### A.    The Gable Action

Plaintiff, Gable, commenced this action on April 2, 2007, on behalf of the following proposed class (the "Michigan Class"):  All current and former owners and lessees of model year 2005 and 2006 Land Rover LR3s purchased or leased in the State of Michigan.  Land Rover answered Gable's Complaint on May 14, 2007, and the parties proceeded to engage in discovery and, as discussed below, to brief and argue the issue of class certification.

### B.    The Gomcsak Action

Plaintiff, Gomcsak, commenced this action on October 10, 2007, on behalf of the following proposed class (the "Ohio Class"):  All current and former owners and lessees of model year 2005 and 2006 Land Rover LR3s purchased or leased in

the State of Ohio.  Land Rover answered Gomcsak's Complaint on November 13, 2007, and the parties proceeded to engage in discovery and, as discussed below, to brief and argue the issue of class certification.

**C.     The Wolin Action**

Plaintiff, Wolin, commenced this action on May 31, 2007, on behalf of the following proposed class (the "Florida Class"):  All current and former owners and lessees of model year 2005 and 2006 Land Rover LR3s purchased or leased in the State of Florida.  Land Rover answered Wolin's Complaint on June 25, 2007, and the parties proceeded to engage in discovery and, as discussed below, to brief and argue the issue of class certification.

**D.     The Class Certification Proceedings**

As the Court is aware, class certification briefing has been completed with respect to the proposed Florida Class, Michigan Class and Ohio Class (collectively, the "Classes").  Following significant discovery, Gable filed his Motion for Class Certification (the "Gable Motion") on January 16, 2008.  Land Rover filed its Opposition to the Gable Motion on March 14, 2008.  Gable filed his Reply in Support of the Gable Motion on May 15, 2008.  Land Rover sought, and was granted, leave to file a Sur-Reply in Opposition the Gable Motion, and did so on May 22, 2008.  Gable filed his Response to the Sur-Reply on June 4, 2008.  The

Court heard oral argument on the Gable Motion on June 23, 2008, and ordered that the parties submit Proposed Findings of Fact and Conclusions of Law ("Findings of Fact") by July 22, 2008. Gable filed his Findings of Fact on July 22, 2008, and Defendant filed its Findings of Fact on July 23, 2008. The Court issued an Order denying Gable's Motion on September 29, 2008.

Following significant discovery, Wolin filed his Motion for Class Certification (the "Wolin Motion") on January 16, 2008. Land Rover filed its Opposition to the Wolin Motion on March 14, 2008. Wolin filed his Reply in Support of the Wolin Motion on May 15, 2008. Land Rover sought, and was granted, leave to file a Sur-Reply in Opposition the Wolin Motion, and did so on May 22, 2008. Wolin filed his Response to the Sur-Reply on June 4, 2008. The Court heard oral argument on Wolin Motion on June 23, 2008, and ordered that the parties submit Findings of Fact by July 22, 2008. Wolin filed his Findings of Fact on July 22, 2008, and Defendant filed its Findings of Fact on July 23, 2008. The Court issued an Order denying Wolin's Motion on September 30, 2008.

Following significant discovery, Gomcsak filed her Motion for Class Certification (the "Gomcsak Motion") on June 2, 2008. Land Rover filed its Opposition to the Gomcsak Motion on August 15, 2008. Gomcsak filed her Reply in Support of the Gomcsak Motion on October 1, 2008. Following the Court's

-6-

September 30, 2008 Order, and Wolin and Gable's subsequent appeal of that

Order, the parties agreed to stay the Gomcsak matter pending the Ninth Circuit's

decision.

The Court's September 30, 2008 Order denied the Wolin and Gable Motions

on the sole basis that it found that Plaintiffs had "not met [their] burden of showing

that common issues will predominate over individual issues" in those cases.  Order

at 8.  Before and after issuing the September 30, 2008 Order, the Court

acknowledged that class certification was an extremely close call.  Despite Land

Rover's arguments to the contrary, the Court never indicated either Gable or Wolin

had failed to satisfy the class certification requirements of Rule 23(a).  As

discussed below, any attempt by Land Rover to resurrect those arguments as this

juncture should be deemed an exercise in futility in light of the Ninth Circuit

Decision.

**E.    The Ninth Circuit Decision**

As Plaintiffs and the Court discussed at the December 6, 2010 hearing, the

Ninth Circuit Decision establishes the following for purposes of Class

Certification:

- ●    "Gable and Wolin assert that the district court abused its discretion
  when it concluded that the proposed class could not show that
  common issues predominate. We agree."  Ninth Circuit Decision, 617

F.3d at 1172.

- "Appellants easily satisfy the commonality requirement. The claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model. Appellants' complaints set forth more than one issue that is common to the class, including: 1) whether the LR3's alignment geometry was defective; 2) whether Land Rover was aware of this defect; 3) whether Land Rover concealed the nature of the defect; 4) whether Land Rover's conduct violated the Michigan Consumer Protection Act or the Florida Deceptive and Unfair Trade Practices Act; and 5) whether Land Rover was obligated to pay for or repair the alleged defect pursuant to the express or implied terms of its warranties. These common core questions are sufficient to satisfy the commonality test." *Id.*

- "Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so." *Id.*

- "Gable and Wolin assert that the defect exists in the alignment geometry, not in the tires, that Land Rover failed to reveal material facts in violation of consumer protection laws, and that Land Rover was unjustly enriched when it sold a defective vehicle. All of these allegations are susceptible to proof by generalized evidence. Although individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect." *Id.* at 1173.

- "Appellants also allege breach of express warranty because Land Rover refused to repair the tires and the geometry defect pursuant to the terms of the Limited Warranty and the Tire Warranty.... As in *Daffin*, all of the proposed class members here are covered by a Limited Warranty that provides for the repair or replacement of defects, and all of the proposed class members allege that their vehicles suffer from the same defect. These claims require common proof of the existence of the defect and a determination whether Land

-8-

Rover violated the terms of its Limited Warranty. Accordingly, we conclude that common issues predominate regarding Land Rover's obligations under its Limited Warranty." *Id.*

● "Gable's and Wolin's claims are typical of the class." *Id.* at 1175.

● "[C]lasswide adjudication of appellants' claims is superior to other means of adjudicating this case." *Id.* at 1176.

● "The parties do not seriously dispute that the proposed class satisfies the numerosity and adequacy requirements." *Id.* at 1172.

● "We reverse on this basis, and remand for the district court to address the remaining class issues. For example, appellants have set forth a proposed plan for a trial bifurcated with a liability phase and a damages phase, which the district court has not addressed. As to the breach of the Tire Warranty claim, while we observe that this claim may not be amenable to class treatment, the district court still must address this issue on remand because it did not previously address it in light of the threshold manifestation requirement it imposed." *Id.* at 1174.

## F.   The Issues That Remain To Be Addressed

Having carefully reviewed the record in the Gable, Gomcsak and Wolin cases, there are only three questions that remain to be addressed.  The first is whether Plaintiffs' proposed trial plan is sufficient from the perspective of manageability.  As explained below, in its briefing on class certification and proposed findings of "fact" and conclusions of law, Land Rover fails to raise any serious or legitimate challenge to the appropriateness of Plaintiffs' proposed trial plan.  Second, on the issue of whether Plaintiffs can pursue claims for damages

related to tire wear, Plaintiffs respectfully submit that this issue as well should be resolved in Plaintiffs' favor once viewed in the proper context and under the authority of the Ninth Circuit Decision.  Third, although Land Rover cynically attempted to challenge numerosity and adequacy in the class certification proceedings before this Court, as the Ninth Circuit Decision holds and the record in this case reflects, no serious basis exists for Land Rover to challenge adequacy and numerosity.  For the reasons explained below, none of these remaining issues create any impediment to class certification.

### III.   DISCUSSION

### A.   Plaintiffs' Trial Plan

Land Rover's challenge to Plaintiffs' Trial Plan consists of the following facile arguments, all of which have effectively been addressed already by the Ninth Circuit's Decision.  In essence, Land Rover argues that Plaintiffs' Trial Plan (a) "is unworkable, making no attempt whatsoever to account for the number of individualized inquiries necessarily implicated in this case," (b) "[t]he liability phase cannot decide through common proof 'whether the vehicles are defective,' as plaintiff proposes," (c) "[e]ach vehicle owner will have to prove the existence of tire wear and that the cause of the tire wear arose from a specific manufacturing defect relating to the rear suspension system and not from the countless external

-10-

1  conditions and driver-specific factors to which that particular LR3 was subject," (d)

2  [the] liability phase also fails to account for the individualized inquiries required to

3  determine whether each putative class member suffered any financial or other

4  cognizable loss," (e) [the] proposed damages phase also fails to account for the

5  individualized inquiries required to determine the amount and type of damages to

6  which each putative class member would be entitled, (f) "[the] proposal for

7  calculating damages on a class-wide basis violates Land Rover's due process rights

8  to assess individually the amount of any remaining reimbursement each putative

9  class member may be entitled to receive." *See* Land Rover's Amended Proposed

10 Findings of Fact and Conclusions of Law in the Wolin Case at 151-153.  Virtually

11 all of these arguments are addressed (and rejected) by the Ninth Circuit Decision.[3]

12      Land Rover's arguments regarding the need for individualized inquiries,

13 whether common proof can establish a defect, and the need for examination of

---

[3]It also bears noting that Land Rover never even raised any manageability concerns in its Brief in Opposition to Class Certification, choosing instead to improperly and belatedly raise this purported issue in its Amended Proposed Findings of Fact and Conclusions of Law, which were submitted after the class certification hearing.  Likewise, as discussed below, Land Rover desperately attempted to challenge the element of numerosity (and a number of other outlandish arguments as part of its "kitchen sink" approach, all of which were resoundingly rejected by the Ninth Circuit Decision) in these Proposed Findings of Fact and Conclusions of Law -- even though it had never raised any such issue before that submission.

-11-

"external conditions and driver-specific factors," (a), (b) and (c) above, were

considered, and resoundingly rejected, by the Ninth Circuit:

> Gable and Wolin assert that the defect exists in the alignment
> geometry, not in the tires, that Land Rover failed to reveal material
> facts in violation of consumer protection laws, and that Land Rover
> was unjustly enriched when it sold a defective vehicle. ***All of these
> allegations are susceptible to proof by generalized evidence.
> Although individual factors may affect premature tire wear, they do
> not affect whether the vehicles were sold with an alignment defect.***

Ninth Circuit Decision, at 1173 (emphasis added).

The Ninth Circuit also rejected Land Rover's argument that individualized

inquiries will be required to determine whether each putative Class member

suffered any financial or other cognizable loss.  This argument is, at its core, the

manifestation argument rejected by the Ninth Circuit:

> Whether they experienced premature tire wear at six months, nine
> months, or later goes to the extent of their damages and not whether
> named appellants "possess the same interest and suffer[ed] the same
> injury as the class members."  Typicality can be satisfied despite
> different factual circumstances surrounding the manifestation of the
> defect. Gable and Wolin, like the rest of the class, may have a viable
> claim regardless of the manifestation of the defect.

Ninth Circuit Decision, at 1175 (internal citations omitted).

Land Rover's remaining arguments were apparently given no weight, and

hence no discussion, by the Ninth Circuit.  As a result, those arguments were not

specifically rejected by the Ninth Circuit Decision.  Nonetheless, it is apparent that

-12-

they are makeweight.  Plaintiffs' proposed Trial Plan would provide the jury with a basis to calculate class-wide damages though the presentation of data and statistics (through experts), as well as, *inter alia*, evidence regarding the effect of the defect at issue, repair and replacement costs and product purchase price.  *See* 3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 10.5 at 483-487 (4th ed. 2002) (there is a growing trend in favor of using aggregate damages trials).  It is well settled that the calculation of damages on a Class-wide basis is both proper and does not create manageability problems (or due process concerns).  *See, e.g., In Re Sugar Industry Antitrust Litigation*, 1976 WL 1374, at *27 (N.D.Cal. May 21, 1976) (citations omitted); *Bell v. Farmers Insurance Exchange*, 9 Cal.Rptr.3d 544, 578 (1st Dist. 2004) ("We find little basis in the decisional law for a skepticism regarding the appropriateness of the scientific methodology of inferential statistics as a technique for determining damages in an appropriate case").  This method has been approved by the leading treatise on class actions:

> Inherent in the basic theory of class actions is the fact that the court and the parties recognize the defendant's full liability exposure from the outset, because of common questions of the defendant's liability to the class.  If the liability to the class is proved, then class recovery entitlement is measured by individual or aggregate proofs of loss or of the defendant's unjust enrichment.

 3 Newberg on Class Actions, § 10.05; *see also, In re Chevron U.S.A., Inc.*, 109

-13-

1  F.3d. 1016, 1019-20 (5th Cir. 1997) ("The essence of the science of inferential

2  statistics that one may confidently draw inferences about the whole from a

3  representative sample of the whole"); *In re Simon II Litigation*, 211 F.R.D. 86, 150

4

5  (E.D.N.Y. 2002), *vacated and remanded on other grounds*, 407 F.3d 125 (2d Cir.

6

7  2005) ("The use of statistical evidence and methods in the American judicial

8  system to establish liability and damages is appropriate" in mass injury cases);

9

10  *Segar v. Smith,* 738 F.2d 1249, 1264 (D.C.Cir. 1984) (court calculated back and

11  front pay in Title VII case on a class-wide basis using statistical methods).  Once

12

13  aggregate damages are established, it is well established that "the allocation of the

14  aggregate sum [of the judgment] among class members is an internal class

15  accounting question that does not directly concern the defendant...."  *Bell*, 9

16

17  Cal.Rptr.3d at 581; 2 Conte & Newberg on Class Actions, § 4:26.  Any damages

18  award by the trier of fact would be claimed by class members through a court

19

20  approved process overseen either by a third party claims administrator or a special

21  master.  *See* Newberg on Class Actions § 9.55.[4]

22

23      [4]Land Rover itself has demonstrated the ability to easily devise a program
24  by which individuals are compensated in varying degrees based upon the damages
    they suffered as a result of the defect in the Vehicles.  In response to customer
25  complaints, Land Rover launched the program, without disclosing its existence to
    consumers, by which Land Rover expressly acknowledged a 30,000 mile (48,000
26  km) useful life for the tires and compensated consumers who complained
27  sufficiently in varying amounts depending on the tire wear they experienced as a

28                                            -14-

1

2

**B.   Plaintiffs' Claims Under The "Tire" Warranty**

3

        The Ninth Circuit Decision distinguishes between the Limited Warranty and

4

a Tire Warranty.  Plaintiffs respectfully submit that this distinction arises from

5

Land Rover's deliberate confusion of the record by repeatedly referring to a tire

6

7

warranty (as a different warranty issued by tire manufacturers and, at times,

8

referring to the Limited Warranty as a tire warranty in the context of its Secret

9

Warranty Program).[5]  To be clear, the only claims that Plaintiffs assert arise under

10

the Limited Warranty and the Ninth Circuit Decision establishes that those claims

11

12

should be certified.   Since claims for damages related to premature tire wear only

13

14

result of the defect (the "Secret Warranty Program").  Under the terms of the

15

Secret Warranty Program, Land Rover (a) paid for replacement of tires and

16

performed a four wheel alignment on the Vehicles under warranty when the wear
difference across a tire is greater than 3/32" (2.4mm) and the inner and outer edge

17

has less than 4/32" (3.2) mm of tread remaining on the tire; and (b) automatically

18

paid for a four wheel alignment on the subject Vehicles under warranty when the

19

wear difference across a tires was greater than 3/32" (2.4mm) and no section of the
tire had less than 4/32" (3.2mm) of tread remaining on the tire.

20

        [5]For example, in Land Rover's Brief to the Ninth Circuit, it stated that

21

"[t]ires are warranted by the individual tire manufacturer and all LR3 owners

22

receive a warranty from Goodyear providing for reimbursement of certain tire

23

claims based upon mileage."  *Id*. at 13-14.  Plaintiffs have never asserted a claim

24

under this tire warranty.  Later in its Appellate Brief, Land Rover acknowledges
that "[a]lthough the Limited Warranty ordinarily excludes tires from coverage,

25

Land Rover has a policy that tire wear may be warranted, but 'only if it has been

26

caused by a manufacturing defect elsewhere on the vehicle.'" *Id*. at 14.  Plaintiffs'

27

claim is that Land Rover violated its obligations under the Limited Warranty and
this policy/interpretation of its own legal obligations under the Limited Warranty.

28

-15-

are asserted under the Limited Warranty (which claims the Ninth Circuit already

has held should be certified) and no claims are asserted under a separate tire

warranty, Plaintiffs respectfully submit that individual proof of damages with

respect to whether members of the Classes suffered from premature tire wear as a

result of the defect should not prevent class certification.  As the Court explained

in *Kincaid v. City of Fresno*, 244 F.R.D. 597, 606-607 (E.D.Cal. 2007):

> In contrast to these numerous common issues of fact and of law,
> individualized issues in this case are limited: whether each plaintiff
> did, in fact, have property destroyed by the defendants and, if so,
> calculation of the appropriate compensatory damages. These types of
> individualized issues -- which are present in nearly all class actions --
> do not defeat class certification under Rule 23(b)(3). *See Mendoza v.
> Zirkle Fruit Co.*, 222 F.R.D. 439, 447-48 (E.D.Wash. 2004)....
> ***Individual calculation of specific damages can be accomplished by
> special master***.  *See Local Joint Exec. Bd.*, 244 F.3d at 1163.

> While individualized proof might be necessary in some exceptional
> cases, "[c]ourts routinely find Rule 23(b)(3)'s predominance
> requirement satisfied despite the need for individualized damage
> determinations when the fact of injury is common." *Lockwood
> Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 582
> (D.Minn.1995); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th
> Cir.1975) ("The amount of damages is invariably an individual
> question and does not defeat class action treatment.") (citation
> omitted); *Local Joint Exec. Bd.*, 244 F.3d at 1163 (holding that some
> "variation among individual [plaintiffs], as well as some potential
> difficulty of proof" was no bar to certification under 23(b)(3) "given
> the number and importance of common issues").

Here, the fact of injury is the defect in the Vehicles and Land Rover's violation of

-16-

1   its Limited Warranty and other legal obligations.  Moreover, in this case,

2   individual proof of damages with respect to tire wear caused by the defect at issue

3   can be accomplished post-trial through the use of a special master, as previously

4   suggested in Plaintiffs' Trial Plan, or through another means of proof designated

5   by the Court.  And, in response to Land Rover's inevitable question of how this

6

7   can be done, the Court and the parties have one clear example -- the fact that,

8   under its Secret Warranty Program, Land Rover already developed a methodology

9
10  to determine when tire wear was caused by the defect -- because, as explained

11  fully in the briefing and submissions in support of class certification, the tire wear

12
13  attributable to the defect is observable and quite specific in nature.

14
          For this reason, this case is obviously far different from the circumstance
15

16  addressed *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-21 (7th Cir.

17  2002), where, as the Ninth Circuit Decision acknowledges, the Court reversed

18
    certification in a case in which "plaintiffs alleged defective tire design because a
19

20  class action would not be manageable: tires were recalled at different times, they

21  may have differed in their propensity to fail, some vehicles were re-sold, some

22
    owners alleged they were advised to underinflate their tires, and there were six tire
23

24  models representing sixty-seven different designs."  Ninth Circuit Decision, 617

25  F.3d at 1174.  As the Sixth Circuit Court of Appeals explained in *Beattie v.*

26

27

28                                          -17-

1   *CenturyTel, Inc.*, 511 F.3d 554, 563-564 (6th Cir. 2007):

2

3       In concluding that common questions predominate over questions
        affecting individual class members, the district court determined that

4

5           [a]lthough damages may be individualized and not all
            customers who received ambiguous bills will say that

6           they did not order or authorize the inside wire
            maintenance insurance program, the overarching

7           question of whether the billing itself violates section
            201(b) or Rule 64.2401 predominates and must be

8           determined before any customer has a right to recover
            under that theory.

9

10

11      *Beattie*, 234 F.R.D. at 169-171.  In response to CenturyTel's
        argument that "the need to prove causation for each plaintiff to show

12      liability demonstrates that individual issues predominate," the district

13      court stated that "the necessity of each plaintiff proving the amount of
        his or her damages is generally not an impediment to class

14      certification." *Id.* The court explained that

15

16          the questions of causation and damages in this case can
            be addressed later in the proceedings by means of a

17          special master, representative trials, or other means.
            However, because the liability issue predominates, this

18          case falls easily into the category of "cases in which a
            class action would achieve economies of time, effort, and

19          expense, and promote ... uniformity of decision as to

20          persons similarly situated, without sacrificing procedural

21          fairness or bringing about other undesirable results."

22

23  *Id.* at 171 (*quoting Amchem v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231

24  (1997)); *see also Olden v. LaFarge Corp.,* 383 F.3d 495, 509 (6th Cir. 2004) ("As

25

26  the district court properly noted, it can bifurcate the issue of liability from the

27

28                                      -18-

issue of damages, and if liability is found, the issue of damages can be decided by

a special master or by another method.  Fed.R.Civ.P. 23(c)(4)(A); *see also Simon*

*v. Philip Morris Inc.*, 200 F.R.D. 21, 30 (E.D.N.Y.2001) ("By bifurcating issues

like general liability or general causation and damages, a court can await the

outcome of a prior liability trial before deciding how to provide relief to the

individual class members" and "minor complaints can be dealt with in the

damages phase if necessary, and it is likely premature to address these issues at

this point"); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,

247 F.R.D. 156, 175, n.28 (C.D.Cal. 2007) (citing a number of cases indicating

that individual questions of damages can be addressed by a special master or

similar approach, including *In re Visa Check/MasterMoney Antitrust Litigation*,

280 F.3d 124, 140 (2nd Cir. 2001) (citations omitted) ("if defendants' argument

(that the requirement of individualized proof on the question of damages is in

itself sufficient to preclude class treatment) were uncritically accepted, there

would be little if any place for the class action device in the adjudication of

antitrust claims, [s]uch a result should not be and has not been readily embraced

by the various courts confronted with the same argument, [and] [t]he

predominance requirement calls only for predominance, not exclusivity, of

common questions"); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298

(5th Cir. 2001) (affirming district court's determination that common issues

predominated because "[a]lthough calculating damages will require some

individualized determinations, it appears that virtually every issue prior to

damages is a common issue"); *In re Potash*, 159 F.R.D. 682, 697 (D.Minn. 1995)

("the fact that the damages calculation may involve individualized analysis is not

by itself sufficient to preclude certification [if] liability can be determined on a

class-wide basis."); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The

amount of damages is invariably an individual question and does not defeat class

action treatment.").  After all, as the *In re Visa* court observed, "[t]here are a

number of management tools available to a district court to address any

individualized damages issues that might arise in a class action, including: (1)

bifurcating liability and damage trials with the same or different juries; (2)

appointing a magistrate judge or special master to preside over individual damages

proceedings; (3) decertifying the class after the liability trial and providing notice

to class members concerning how they may proceed to prove damages; (4)

creating subclasses; or (5) altering or amending the class."  *See In re Visa*, 280

F.3d at 141; *see also Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 641

(S.D.Cal. 2010), *quoting Tierno v. Rite Aid Corp.*, 2007 WL 4166028, at *2

(N.D.Cal. Nov.19, 2007) ("[a]s to damages, the parties should explore alternative

-20-

means of resolving the individual issues through alternative means such as

'administrative mini-proceedings, special master hearings, and specially fashioned

formulas or surveys'").  The proposed Trial Plan in this action properly

contemplates the use of a special master or settlement administrator following a

determination of class-wide damages.  Thus, since the common questions

regarding the existence of the defect at issue and of Land Rover's liability under

its Limited Warranty and other applicable law clearly predominate, as the Ninth

Circuit Decision holds, the Court clearly should certify the Classes proposed by

Plaintiffs.  As detailed above, following a trial on liability and Class-wide

damages, through the use of a special master or other alternative means, the Court

can proceed to address any individual damage questions to be established with

respect to tire wear or otherwise.  For this reason and all of the reasons stated in

Plaintiffs' briefing and other submissions in support of class certification,

Plaintiffs respectfully submit that individual damage questions do not create any

obstacle to certifying all of the claims of the proposed Classes.

**C.      Plaintiffs Have Established The Adequacy And Numerosity Elements
As The Ninth Circuit Decision Recognizes**

To the extent that Land Rover has the temerity to once again challenge the

adequacy and numerosity elements as part of its anticipated, desperate attempt to

avoid class certification, it bears noting that, as the Ninth Circuit Decision recognizes, "[t]he parties do not seriously dispute that the proposed class satisfies the numerosity and adequacy requirements."  Ninth Circuit Decision, 617 F.3d at 1172.

      1.    <u>Plaintiffs Have Established Numerosity</u>

To satisfy the Rule 23(a)(1) requirement that joinder of all members of the Class is impracticable -- commonly referred to as "numerosity" -- "[t]he exact size of the class need not be known so long as general knowledge and common sense indicate that it is large."  *Doe v. Los Angeles Unified Sch. Dist.*, 48 F.Supp.2d 1233, 1239 (C.D.Cal. 1999).  Here, as the Ninth Circuit recognized, Land Rover has not, at any stage, seriously disputed that joinder of all members of the Class is impracticable.  The Classes are composed of all current and former Florida, Michigan and Ohio owners and lessees of the Vehicles.  Land Rover has sold and leased more than 35,000 Vehicles nationwide.  Land Rover has reported that it sold or leased approximately 4,677 Vehicles in Florida, 1,646 Vehicles in Michigan and 1,115 Vehicles in Ohio.  *See* Land Rover's Response to Plaintiffs' Second Set of Special Interrogatories in *Colon v. Land Rover North America, Inc.*, Case No. 1:06-CV-075163 (Superior Court of California, County of Santa Clara), a true and correct copy of which is attached as Exhibit "B."  Hence, the

numerosity requirement has clearly been satisfied in each case. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.Cal. 1988) ("classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstance of each case, and classes of 40 or more are numerous enough"); Newberg on Class Actions § 3.05 at 247 (4th ed. 2002) ("[A]s few as 40 class members should raise a presumption that joinder is impracticable.").

        2.   <u>Plaintiffs Have Established Adequacy</u>

Like numerosity, Land Rover has not, because it cannot, seriously disputed the adequacy element at any of the various class certification stages in these cases. In fact, to the extent that Land Rover has attempted to contest adequacy, it effectively has only repackaged typicality arguments regarding the Plaintiffs, all of which have been rejected by the terms of the Ninth Circuit Decision.

The adequacy requirement of Rule 23(a)(4) is met if a plaintiff fulfills two conditions: (a) the plaintiff's attorneys must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, it is undisputed that Plaintiffs are represented by counsel who are qualified and possess substantial experience in the conduct of litigation of the size, scope, and complexity of this

case in general and consumer class actions in particular.  As to the second prong

of the "adequacy" test, only a conflict that goes to the very subject matter of the

litigation will defeat a party's claim of representative status.  Factual differences in

the merits of the named plaintiff's underlying claims do not affect the plaintiff's

ability to vigorously represent the class.  *Walters v. Reno*, 145 F.3d 1032, 1046

(9th Cir. 1997).  Here, Plaintiffs do not have any conflicts with the members of the

Classes.  Plaintiffs' injuries are essentially the same as those of the members of the

proposed Classes.  Clearly, Plaintiffs have, and will continue to, vigorously pursue

relief on behalf of the proposed Classes.  Moreover, as has been amply

demonstrated, Plaintiffs are able and willing to prosecute this case and to protect

the interests of the Classes.

# IV.   CONCLUSION

For the reasons explained above, Plaintiffs respectfully submit that the Court should certify the proposed Classes and enter the proposed Order after hearing argument on January 31, 2011.  Plaintiffs look forward to appearing before the Court on January 31, 2011, and to a trial on the merits of the Classes' claims.[6]

Dated:   December 31, 2010                     MAURIELLO LAW FIRM, APC


                                              s/Thomas D. Mauriello
                                              Thomas D. Mauriello (SBN 144811)
                                              1181 Puerta Del Sol, Suite 120
                                              San Clemente, CA 92673
                                              Telephone: (949)542-3555
                                              Facsimile:   (949) 606-9690
                                              Email: tomm@maurlaw.com

                                              James C. Shah (SBN 260435)
                                              Nathan C. Zipperian (*pro hac vice*)
                                              SHEPHERD FINKELMAN MILLER
                                               & SHAH, LLP
                                              35 East State Street
                                              Media, PA 19063
                                              Telephone:  (610) 891-9880
                                              Facsimile:  (610) 891-9883
                                              Email: jshah@sfmslaw.com
                                                     nzipperian@sfmslaw.com

---

[6]Plaintiffs stand ready to submit a proposed order certifying the Classes to the extent that the Court determines that such a submission would be helpful under all of the circumstances.

-25-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James E. Miller (SBN 262553)
SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone:  (860) 526-1100
Facsimile:  (860) 526-1120
Email: jmiller@sfmslaw.com

Mark F. Anderson (SBN 44787)
ANDERSON, OGLIVIE & BREWER,
LLP
600 California Street, 18th Floor
San Francisco, CA 94108
Telephone: (415) 651-1951
Email: mark@aoblawyers.com

**Attorneys for Plaintiffs**
**And The Proposed Classes**

-26-